**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x

BENJAMIN STEPHENS, JR.,

Plaintiff,

- against -

Case No. 13-cv-5779 (RA)(DF)

DONALD E. VENETTOZZI, et al.,

Defendants.

-----------------------------------------------------------------x

**PLAINTIFF'S LIMITED OBJECTION TO REPORT & RECOMMENDATION**

**JOSEPH HAGE AARONSON LLC**
Mara Leventhal
Christopher J. Stanley
Gila S. Singer
485 Lexington Avenue, 30th Floor
New York, New York 10017
Tel. (212) 407-1200
Fax (212) 407-1280

*Limited Appearance* Pro Bono *Counsel for Benjamin Stephens*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ........ ii

PRELIMINARY STATEMENT ........ 1

BACKGROUND ........ 2

ARGUMENT ........ 6

I. Lee's Undisputed Knowledge of Assaults Against Stephens Establishes His Deliberate Indifference ........ 7

II. Stephens Adequately Pleads Deliberate Indifference Based on Lee's Acquiescence in a Culture of Abuse at Green Haven ........ 9

CONCLUSION ........ 12

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Ames v. Stevens*,
No. 9:12-CV-1487, 2015 WL 5513021 (N.D.N.Y. Sept. 17, 2015) .................................. 10-11

*BPP Illinois, LLC v. Royal Bank of Scotland Grp., PLC*,
No. 13-CV-638 (JMF), 2015 WL 6143702 (S.D.N.Y. Oct. 19, 2015) ............................. 10 n.5

*Cano v. City of N.Y.*,
44 F. Supp. 3d 324 (E.D.N.Y. 2014) ........................................................................ 11

*Coronado v. Goord*,
No. 99 CIV. 1674 (RWS), 2000 WL 1372834 (S.D.N.Y. Sept. 25, 2000) ............................... 9

*Davis v. Torres*,
No. 10 Civ. 2236 (RJS)(HBP), 2012 WL 3070092 (S.D.N.Y. May 2, 2012),
*report and recommendation adopted by* 2012 WL 3070083 (S.D.N.Y. May 2, 2012) ............. 8

*Farmer v. Brennan*,
511 U.S. 825 (1994) ....................................................................................... 12

*Fleming v. City of N.Y.*,
No. 10 Civ. 3345 (AT)(RLE), 2014 WL 6769618 (S.D.N.Y. Nov. 26, 2014) ................. 11 n.6

*Gadson v. Goord*,
No. 96 Civ. 7544 (SS), 1997 WL 714878 (S.D.N.Y. Nov. 17, 1997) ................................... 11

*Gill v. Mooney*,
824 F.2d 192 (2d Cir. 1987) ............................................................................. 11

*Hill v. Curcione*,
657 F.3d 116 (2d Cir. 2011) ............................................................................. 10

*Lewis v. Swicki*,
No. 13-4626-cv, 2015 WL 6457481 (2d Cir. Oct. 27, 2015) ............................................ 9

*In re MBIA, Inc., Sec. Litig.*,
700 F. Supp. 2d 566 (S.D.N.Y. 2010) ................................................................... 10

*N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
709 F.3d 109 (2d Cir. 2013) ........................................................................ 10 n.5

*Patsy's Italian Restaurant, Inc. v. Banas*,
575 F. Supp. 2d 427 (E.D.N.Y. 2008) ............................................................ 10 n.5

*Pearson v. Walden Univ.*,
No. 13-CV-7840 (KMK), 2015 WL 6619981 (S.D.N.Y. Oct. 30, 2015)....................11 n.6

*Perri v. Coughlin*,
No. 90-CV-1160, 1998 WL 542333 (N.D.N.Y. Aug. 18, 1998)....................11

*Quezada v. Roy*,
No. 14 Civ. 4056 (CM), 2015 WL 5547277 (S.D.N.Y. Sept. 18, 2015)....................11 n.6

*Rahman v. Fisher*,
607 F. Supp. 2d 580 (S.D.N.Y. 2009)....................8

*United States v. Bari*,
599 F.3d 176 (2d Cir. 2010)....................10 n.5

*Walker v. Shaw*,
No. 08 Civ. 10043 (CM), 2010 WL 2541711 (S.D.N.Y. June 23, 2010)....................9

*Wang v. Pataki*,
396 F. Supp. 2d 446 (S.D.N.Y. 2005)....................10

*Williams v. Koenigsmann*,
No. 14CV2498 (NSR) (LMS), 2015 WL 4393321 (S.D.N.Y. July 16, 2015)....................11 n.6

**RULES & STATUTES**

28 U.S.C. § 636....................1, 6, 7

Fed. R. Civ. P. 72....................1, 7

Fed. R. Evid. 803....................11

Plaintiff Benjamin Stephens ("**Stephens**") respectfully submits the following limited objection (the "Objection") to Magistrate Judge Freeman's Report & Recommendation filed February 24, 2016 (ECF. No. 176) (the "**Report**"), pursuant to Federal Rule of Civil Procedure 72(a) and 28 U.S.C. § 636(b)(1) and (3).

## PRELIMINARY STATEMENT[1]

Between August 2010 and March 2012, Stephens was incarcerated at Green Haven Correctional Facility ("**Green Haven**"), where he was subjected to escalating violence at the hands of corrections officers ("**COs**") in retaliation for filing grievances and complaints about his treatment, including assaults that took place on November 1, 2011 and March 23, 2012 (respectively, the "**November 1 Assault**" and the "**March 23 Assault**"). Certain defendants, including Superintendent William A. Lee, moved to dismiss Stephens' resulting claims.

While the Report correctly recommended denying Lee's motion to dismiss the failure-to-protect claim based on the November 1 Assault — because Stephens' "history of complaints" coupled with his October 2011 letter to Lee communicating "his immediate fear of assault" plausibly apprised Lee of a serious risk of harm, Report at 42 — it erred in recommending dismissal of that claim against Lee based on the March 23 Assault, *id.* at 44-49, because:

- Stephens alleged a specific communication to Lee about retaliatory threats he received even after the November 1 Assault that, coupled with the pattern of previous assaults on Stephens, plausibly apprised Lee of a serious risk of harm prior to the March 23 Assault. *See infra* § I.

- Stephens adequately pled a "culture of abuse" at Green Haven of which Lee would have been aware, based on more than 10 incidents of retaliation and

---

[1] "¶_" refers to the Verified Amended Complaint ("**AC**") filed on December 8, 2014 (ECF No. 67); "**Ex. _**" refers to exhibits to the Declaration of Christopher J. Stanley dated September 30, 2015 (ECF No. 140) ("**Stanley Decl.**"); and "**Reply**" refers to the Reply Memorandum in further Support of Motion to Dismiss Claims Against 14 Defendants filed on October 30, 2015 (ECF No. 143). Emphasis has been added to, and internal quotations, brackets and citations omitted from, quoted material in this brief, except as indicated.

> excessive force alleged against Stephens and five other inmates at Green Haven alleged in the AC, and based on the 2006 Report of the Correctional Association of New York ("**CANY**" and the "**CANY Report**") (Ex. B), of which the Report erroneously declined to take judicial notice. *See infra* § II.

Because the AC amply pleads Lee's deliberate indifference to the risks of the March 23 Assault, Lee's motion to dismiss Stephens' failure-to-protect claim should be denied.

## BACKGROUND[2]

**Stephens and Lee**. Stephens is an inmate of the New York State Department of Corrections and Community Supervision. During the relevant period, Stephens was incarcerated at Green Haven, where Lee was the Superintendent.

**Stephens Needs Protection**. In a series of degrading and painful incidents in 2010, Stephens — who has a chronic medical condition that makes him urgently need to urinate (¶3 & n.1) — was repeatedly denied timely access to the bathroom and forced to urinate on himself. *See* ¶¶11-20, 30-41, 44-49. Stephens promptly filed grievances in connection with each incident and suffered retaliation — including subsequent denials of bathroom access and, later, threats and physical assaults — as a result. *See, e.g.*, ¶¶23, 42, 50, 120.

On August 14, 2010, defendant Lieutenant Mark A. Tokarz threatened Stephens (*e.g.*, ¶61 ("Keep filing these Grievances and I'll make your time here rougher than it is."); ¶67 ("If you grieve me or my son, I'll have you killed!")), and assaulted him. ¶¶67-68. Stephens woke up in the emergency room and was taken to the infirmary, where Sergeant Robert Cocuzza, accompanied by CO Richard Smith, further threatened him ("It's going to get wors[e] for you for grieving me."), and slapped and punched Stephens in his hospital bed. ¶¶86-87, 96.

---

2 Because the Objection is limited, Stephens focuses this background recitation on the allegations of the AC and portions of the Report that bear most directly on the Objection. The facts are set forth in the AC, which is presumed to be true for the purposes of deciding a motion to dismiss, *Dolan v. Connolly*, 794 F.3d 290, 293 (2d Cir. 2015), and the CANY Report, which the Court may judicially notice for the reasons set forth in §II, *infra*.

**Stephens Unsuccessfully Seeks Lee's Protection**. Stephens wrote a letter to Superintendent Lee notifying him of these assaults. ¶54. Stephens also filed two grievances about them. ¶¶120, 144-47, 167. By late 2010, Lee denied both grievances — one because he found Stephens' claims "unsubstantiated," and the other based upon a suspect investigation carried out by one of Stephens' assailants. ¶¶120, 162.

On October 26, 2011, Stephens wrote to Lee again, requesting a transfer within the prison because he feared another assault or further retaliation by the staff on his housing block, A-Block. ¶171; *see also* Ex. A. Stephens explained to Lee that he feared for his safety because the prison staff on A-Block had recently physically assaulted other prisoners and one of Stephens' prior assailants worked there. *Id*. at 2-3; *see also* ¶174. Lee made no effort to investigate these claims and promptly denied Stephens' transfer request, stating that it was "based on speculation and assumption" and advising that Stephens "would need to identify who you are alleging is acting inappropriately to allow your claim to be investigated." ¶¶178-79, 181.

**November 1, 2011 Assault**. Four days after Lee denied Stephens' request for a transfer, Stephens was attacked again, this time by CO Sean Carlson during a pretextual pat-frisk on November 1, 2011. ¶¶185-91. Carlson threatened Stephens, saying he "kn[e]w about your bullshit letter to the Superintendent … don't ever mention my name in your fuckin' letters," and choked Stephens and injured his testicles. ¶¶190-91. Stephens immediately sent a letter to Lee about the assault and filed a related grievance on November 11, 2011, to no avail. ¶¶201, 205. Lee denied the grievance, finding that Stephens' "allegations could not be substantiated," ¶206, but Stephens was transferred out of A-Block on November 2, 2011. ¶¶224, 226.

**March 23, 2012 Assault**. Stephens continued to seek Lee's protection from retaliatory acts. After Stephens' transfer to a new housing block, a CO warned him: "Carlson is my buddy,

and we can cause all sort[s] of problems for you — no matter where you are housed at this Facility." ¶250. Stephens promptly filed a new grievance, which Lee again denied. ¶¶252-53.

Thereafter, on March 23, 2012, Stephens was assaulted yet again, by Sergeant Michael Mrzyglod. ¶¶259-309. Mrzyglod took Stephens to a search room, demanded that Stephens retract his grievances, and punched and choked Stephens when he refused to comply. ¶¶268-77. Stephens collapsed en route to his housing block and was taken to the emergency room. ¶¶283-84, 289. Yet the threats of violence continued unabated thereafter. *See* ¶293 ("If you tell on me, I'll have you seriously hurt — no matter where you're at in the Department."); ¶309 ("the injuries will be much wors[e], next time, for you.").

**<u>Pattern of Abusive Practices at Green Haven</u>**. Stephens is not the only victim of abuse by Green Haven staff. In addition to the multiple incidents of threats and violence against Stephens, the AC identifies five other inmates who were beaten by Green Haven COs (one on March 25, 2004, three in October 2011, and one on October 13, 2013). AC at 33A n.28, 59A n.39; Ex. A. Such incidents were in keeping with Green Haven's culture and practice, as documented in the CANY Report (which has been publicly available since November 2006, *see* www.correctionalassociation.org/wp-content/uploads/2012/05/Green_Haven_5-24-06.pdf; www.correctionalassociation.org/resource/green-haven-correctional-facility; Stanley Decl. ¶4). The CANY Report observes: "Throughout the prison we received **<u>reports of staff participating in physical abuse, verbal harassment, threats and intimidation and retaliation against inmates who file complaints</u>**. The consistency with which we heard these reports in all areas of the prison has **<u>led us to conclude that there is significant misconduct among some of the security staff at Green Haven</u>**." Ex. B at 10-11.

**<u>The Report</u>**. The Report recommended that the Court deny Lee's motion to dismiss

Stephens' failure-to-protect claim against him arising from the November 1 Assault, but concluded that Stephens' allegations "as currently pleaded" are "insufficient to state a deliberate-indifference claim against Lee for the March 23, 2012 assault." Report at 42-43. With respect to the November 1 Assault, the Report explained that "on October 26, 2011, [Stephens] notified Lee of his fear that he would be imminently assaulted by A-Block staff; that Lee took no action to transfer him from A-Block or otherwise protect him from violence; and that he was actually subjected to such an assault just four days later." *Id*. at 41. Stephens' history of "previous complaints regarding retaliatory assaults by Green Haven staff," coupled with that October 26, 2011 "communication of his immediate fear of assault, could plausibly have apprised Lee of a serious risk of harm to Plaintiff." *Id*. at 42.

With respect to the March 23 Assault, however — notwithstanding Stephens' prior complaints concerning retaliatory assaults, his October 26, 2011 communication (¶171 and Ex. A), the November 1 Assault and Stephens' subsequent grievances regarding that assault and the subsequent threat of retaliation by another prison guard (¶¶205, 225, 250) — the Report found that Stephens failed to "identify any specific communication to Lee preceding the alleged March 23, 2012 assault by Mrzyglod." *Id*. at 42. The Report determined that allegations that Stephens "experienced multiple alleged constitutional violations" during "three discrete periods" "over the course of approximately 18 months" with "extensive gaps" of several months between, "along with the lack of any allegations indicating that [Stephens] was subjected to retaliation or excessive force while housed in E-Block (where he was housed at the time of the March 23, 2012 assault)," were otherwise "insufficient to permit a reasonable inference that Lee was deliberately indifferent to the risk that Plaintiff would be subjected to retaliatory force by Green Haven staff on or about March 23, 2012." *Id*. at 43-44.

The Report also concluded that Stephens had not properly pled Lee's failure to protect him from the March 23 Assault based on a culture of abuse at Green Haven, because the AC did not plead a "culture of abuse at Green Haven [] so longstanding and pervasive that Superintendent Lee would have been aware" of the more general risk of retaliatory assault. *Id*. at 45. The Report found that the five "isolated" incidents of excessive force against other inmates identified in the AC, "one of which occurred after the events at issue," did "not plausibly suggest that Lee was aware, on March 23, 2012, that Plaintiff was under a general risk due to a culture of abuse against inmates who filed grievances." *Id*. at 46. The Report declined to rely on the CANY Report — which documented a practice of retaliation against inmates at Green Haven — because the AC "did not incorporate the report" and "the findings of a private organization are not a matter of public record such that this Court make take judicial notice of the report's contents." *Id*. at 29, 46. The Report nevertheless recommended granting Stephens leave to amend the complaint to replead his failure-to-protect claim against Lee arising from the March 23 Assault because "it is possible that Plaintiff could plead additional facts showing Lee's deliberate indifference" — noting "in particular" the CANY Report that "the Court could not consider in opposition to Lee's motion." *Id*. at 49-50.

The Report otherwise recommended denying the motion to dismiss by defendant Hann "in its entirety" and denying the motion to dismiss by Lee, Snedeker and D'Aneglico "in all other respects." *Id*. at 30, 36, 50. Stephens does not object to these portions of the Report.

## ARGUMENT

A district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party timely objects, the district court reviews *de novo* the parts of the report and recommendation to which

the party objected. *See id*.; Fed. R. Civ. P. 72(b)(3).

As detailed below, the Court should deny dismissal of the claim that Lee failed to protect Stephens from the March 23 Assault because the AC adequately pleads Lee's deliberate indifference based on (1) allegations concerning multiple prior retaliatory acts against Stephens, coupled with Stephens' specific communications to Lee about the same within months of the March 23 Assault; or (2) a culture of abuse at Green Haven of which Lee would have been aware, as demonstrated by the more than 10 incidents of retaliation and excessive force alleged against Stephens and other inmates at Green Haven, or the CANY Report, of which the Court may take judicial notice, or both. *See* Report at 44, 46.

## I. Lee's Undisputed Knowledge of Assaults Against Stephens Establishes His Deliberate Indifference

It is undisputed — and the Report found — that the AC adequately alleged Lee was personally notified, by letters and grievances, of a pattern of retaliation against Stephens starting in August 2010.[3] While the Report held that this "history of complaints," when coupled with a specific October 26, 2011 request to Lee for protection, was sufficient to sustain a claim for failure to protect, the Report concluded, incorrectly, that Stephens did not identify any specific communication to Lee preceding the March 23 Assault to support the claim. Report at 42. In fact, the AC pleads that Stephens brought a renewed threat of retaliation — by a CO who warned, "Carlson is my buddy, and we can cause all sort[s] of problems for you — no matter where you are housed at this Facility," ¶250 — to Lee's attention by filing a grievance on

[3] *See, e.g.,* Report at 42; ¶¶27-53 (describing August 2010 grievances alleging retaliation, which were reviewed by Lee), ¶54 (describing letters and grievances sent to Lee in August 2010 concerning retaliation and assault), ¶171 (describing October 26, 2011 letter to Lee describing threats by prison guards); Ex. A (same); ¶201, 205-06 (describing letter to Lee and grievance reviewed by Lee concerning November 1, 2011 retaliatory assault).

November 4, 2011, *after* the November 1 Assault. ¶¶252-53.[4] When coupled with Stephens' "history of complaints," this specific threat likewise suffices to state a claim against Lee arising from the March 23 Assault. *See Davis v. Torres*, No. 10 Civ. 2236 (RJS)(HBP), 2012 WL 3070092, at *5 (S.D.N.Y. May 2, 2012) ("a prisoner validly states an Eighth Amendment claim based on a failure to protect when he alleges that he informed corrections officers about a specific fear of assault and is then assaulted"), *report and recommendation adopted by* 2012 WL 3070083 (S.D.N.Y. July 27, 2012); *Rahman v. Fisher*, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("a supervisor may be liable for her failure to remedy … where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it").

The Report's related conclusion that the period between the November 1 Assault and the March 23 Assault constituted a "gap" so "extensive" that no "reasonable inference [could be drawn] that Lee was deliberately indifferent to the risk that Plaintiff would be subjected to retaliatory force by Green Haven staff on or about March 23, 2012," Report at 44, is also erroneous. First, it is expressly premised on the "lack of any allegations indicating that Plaintiff was subjected to retaliation or excessive force while housed in E-Block," *id.*, notwithstanding the AC's directly contrary allegation that Stephens was threatened with retaliation after his transfer. ¶¶226, 250. Indeed, the "gap" is far from "extensive," since Stephens' November 4, 2011 grievance, which Lee subsequently denied, put Lee on notice of the specific threat of retaliatory action against Stephens within that time period. ¶¶252-53.

Nor does the short "gap" between Stephens' notice to Lee of the threat and the March 23 Assault undermine the AC's well-pleaded allegations of deliberate indifference as a matter of

---

[4] Because Lee first argued (incorrectly) on reply that Stephens alleged no "incidents between his transfer on November 2, 2011, and the March 23, 2012, incident," *see* Reply at 7, Stephens had no opportunity to respond to Lee's error in his opposition to the dismissal motion.

law. The Report (at 44-45) cites *Coronado v. Goord*, No. 99 Civ. 1674 (RWS), 2000 WL 1372834 (S.D.N.Y. Sept. 25, 2000), for the proposition that a "significant amount of time since a prior attack lessens the imminence of the risk that a similar attack will occur," but *Coronado* involved a plaintiff "attacked **10 years** before at another correctional facility." *Id.* at *5. Here, the "gap" of — at most — a few months is not sufficient to defeat deliberate indifference. *See Lewis v. Swicki*, No. 13-4626-cv, 2015 WL 6457481, at *1-2 (2d Cir. Oct. 27, 2015) (summary order) (vacating dismissal of 8th Amendment claim where "assault did not occur until nearly six months later" because "we are not persuaded that the fact that Lewis was not attacked for several months after the threat was made is sufficient to defeat his deliberate indifference claim at this stage"); *Walker v. Shaw*, No. 08 Civ. 10043 (CM), 2010 WL 2541711, at *9 (S.D.N.Y. June 23, 2010) (rejecting argument "that Plaintiff cannot maintain any claims for constitutional deprivation because he did not suffer any physical attack during those two months," as "an actual attack is not necessary to allege … a substantial risk of serious harm, since it is based on hindsight rather than on circumstances of which [an] official was aware at the time he acted or failed to act.").

## II. Stephens Adequately Pleads Deliberate Indifference Based on Lee's Acquiescence in a Culture of Abuse at Green Haven

The Report further erred in concluding that the AC failed to allege a "culture of abuse at Green Haven [] so longstanding and pervasive that Superintendent Lee would have been aware that any inmate at that facility who filed a grievance faced a generalized risk of retaliatory assault." Report at 45.

First, not only does the AC plead more than five incidents of threats and retaliation against Stephens himself, *see* Report at 44, but it also identifies incidents of assaults against five other inmates at Green Haven. *Id*. at 46. Because Stephens filed the AC *pro se*, these allegations

warrant "special solicitude" and should be interpreted "to raise the strongest claims that it suggests." Report at 21 n.16 (citing *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)).

Second, the Report erred in declining to take judicial notice of the CANY Report, which documented "significant misconduct among some of the security staff at Green Haven," including widespread reports of "threats and intimidation and retaliation," Ex. B at 10-11, because it held that "the findings of a private organization are not a matter of public record such that this Court may take judicial notice of the report's contents." Report at 29. In fact, the CANY Report is publicly available at http://www.correctionalassociation.org/wp-content/uploads/2012/05/Green_Haven_5-24-06.pdf. *See* Stanley Decl. ¶4. It is well-established that courts can take judicial notice of the reports of private entities that are publicly available, like the CANY Report, *see In re MBIA, Inc., Sec. Litig.*, 700 F. Supp. 2d 566, 576-77 (S.D.N.Y. 2010) (taking judicial notice of reports created by securities analysts), including documents available online, *see Wang v. Pataki*, 396 F. Supp. 2d 446, 458 n.2 (S.D.N.Y. 2005) ("The Court may take judicial notice of such internet material," referencing online listings in the Village Voice).[5]

The sole authority the Report cited for the proposition that a report published by a private entity is not judicially noticeable was *Ames v. Stevens*, No. 9:12-CV-1487 (MAD/RFT), 2015 WL 5513021 (N.D.N.Y. Sept. 17, 2015). But *Ames* is not a judicial notice case; rather, it considered the application of the hearsay exception for public records to a report by CANY

---

5 *See also, e.g.*, *N.J. Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 709 F.3d 109, 127 n.11 (2d Cir. 2013) ("courts considering a motion to dismiss may "take judicial notice of the fact that press coverage ... contained certain information"); *United States v. Bari*, 599 F.3d 176, 180 (2d Cir. 2010) (upholding judicial notice in a criminal case, noting "a judge need only take a few moments to confirm his intuition by conducting a basic Internet search"); *BPP Illinois, LLC v. Royal Bank of Scotland Grp., PLC*, No. 13-CV-638 (JMF), 2015 WL 6143702, at *8 (S.D.N.Y. Oct. 19, 2015) ("[I]t is well established that a court may take judicial notice of reports and newspaper articles."); *Patsy's Italian Restaurant, Inc. v. Banas*, 575 F. Supp. 2d 427, 443 n.18 (E.D.N.Y. 2008) ("It is generally proper to take judicial notice of articles and Web sites published on the Internet.").

pursuant to Federal Rule of Evidence 803(8). *Id.* at *7. Because Rule 803(8) has no bearing on judicial notice, *Ames* does not preclude judicial notice of the CANY Report here.

Rather than take judicial notice of the CANY Report, the Report recommended that Stephens amend his complaint to plead "additional facts showing Lee's deliberate indifference," including facts regarding "Lee's supposed knowledge of pervasive retaliatory assaults at Green Haven." Report at 49-50. But the Court's mandate to read *pro se* complaints generously and "with solicitude" makes it appropriate to consider "plaintiff's additional materials" submitted in opposition to a motion to dismiss, including the CANY Report, without requiring Stephens to amend his complaint to explicitly incorporate it. *Gadson v. Goord*, No. 96 Civ. 7544 (SS), 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997) (Sotomayor, J.) (considering allegations in opposition papers); *see also Gill v. Mooney*, 824 F.2d 192, 195 (2d Cir. 1987) (considering affidavit submitted by *pro se* plaintiff in opposition to motion to dismiss).[6]

It is beyond cavil that the CANY Report — which documents a pervasive culture of abuse and retaliatory assaults at Green Haven, where Lee served as Superintendent — supports Stephens' claim that Lee failed to protect Stephens from the assaults he suffered, including the March 23 Assault. *See Cano v. City of N.Y.*, 44 F. Supp. 3d 324, 329, 334 (E.D.N.Y. 2014) (supervisors were notified about prison conditions by complaints from CANY and similar organizations); *Perri v. Coughlin*, No. 90-CV-1160, 1998 WL 542333, at *6 (N.D.N.Y. Aug. 18, 1998) (concluding that a report by CANY describing deficient treatment of mentally ill inmates

---

[6] Cases applying this standard in this District are legion. *See, e.g.*, *Quezada v. Roy*, No. 14 Civ. 4056 (CM), 2015 WL 5547277, at *8 (S.D.N.Y. Sept. 18, 2015) ("The court may consider factual allegations made by a *pro se* plaintiff in opposition papers and other additional materials."); *Williams v. Koenigsmann*, No. 14CV2498 (NSR) (LMS), 2015 WL 4393321, at *2 (S.D.N.Y. July 16, 2015) (same); *Fleming v. City of N.Y.*, No. 10 Civ. 3345 (AT)(RLE), 2014 WL 6769618, at *3 (S.D.N.Y. Nov. 26, 2014) (similar); *see also Pearson v. Walden Univ.*, No. 13-CV-7840 (KMK), 2015 WL 6619981, at *1 n.1 (S.D.N.Y. Oct. 30, 2015) (similar).

and other lawsuits could have notified the Commissioner of Correctional Services of ongoing constitutional violations). This amply satisfies *Farmer v. Brennan*, which recognizes that where "evidence showing that a substantial risk of [] attacks was … well-documented … and the circumstances suggest that the defendant-official being sued had been exposed to information concerning the risk and thus must have known about it," "a trier of fact [may] find that the defendant-official had actual knowledge of the risk" to support an Eight Amendment claim. 511 U.S. 825, 842-43 (1994).

**CONCLUSION**

For the foregoing reasons, the portion of the Report recommending the granting of Lee's motion to dismiss with respect to claims arising from the March 23 Assault should not be adopted. Because Stephens adequately pleads Lee's deliberate indifference to the risk of the March 23 Assault, Lee's motion to dismiss should be denied in its entirety.

Dated: March 11, 2016
New York, New York

Respectfully submitted,

JOSEPH HAGE AARONSON LLC

By: */s/ Mara Leventhal*
Mara Leventhal
Christopher J. Stanley
Gila S. Singer
485 Lexington Avenue, 30th Floor
New York, New York 10017
Tel: (212) 407-1200
Fax: (212) 407-1268

*Limited Appearance* Pro Bono *Counsel for Benjamin Stephens*