UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BENJAMIN STEPHENS, JR.,

                    Plaintiff,

          -v-

D. VENETOZZI, *et al.*,

                  Defendants.
------------------------------------------------------------X

USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 12/21/2020

No. 13 CV 5779 (RA)

MEMORANDUM
OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

      Plaintiff Benjamin Stephens, Jr. brought this action pursuant to 42 U.S.C § 1983, alleging that Defendants, various New York state corrections officers and officials, violently assaulted him on multiple occasions from 2010 to 2012 while he was incarcerated at Green Haven Correctional Facility ("Green Haven"). The Court granted partial summary judgment in favor of Defendants, but declined to dismiss the claims stemming from an assault that allegedly occurred on September 20, 2010. On June 24, 2019, the Court held an evidentiary hearing concerning Plaintiff's exhaustion of administrative remedies with respect to those claims. Following the hearing, the parties submitted additional briefing on the issue. Trial on the surviving claims is set for the first week of February 2021.

      Now before the Court is the determination as to whether administrative remedies were unavailable to Plaintiff with respect to the September 20 assault, which would preclude dismissal of those claims for failure to exhaust. Finding that the factual disputes underlying that question are intertwined with those that underlie Plaintiff's substantive claims, the Court declines to dismiss those claims before trial.

## BACKGROUND

Plaintiff filed this action on August 15, 2013, alleging that Defendants "maliciously and sadistically subjected [him] to threats [and] physical assaults" in retaliation for the exercise of his First Amendment Right to petition the government for a redress of grievances." Compl. at 10. As relevant here, Plaintiff brings claims of excessive force, failure to intervene, failure to protect, and retaliation with regard to the September 20 assault. It is undisputed that Plaintiff never filed a grievance at Green Haven with respect to that assault. Defendants moved for summary judgment on those claims on the grounds of failure to exhaust. The Court denied that motion, finding that genuine issues of material fact precluded a determination that administrative remedies were available to Plaintiff with respect to the September 20 assault. Dkt. 307. On June 24, 2019, the parties appeared for an evidentiary hearing that concerned those factual issues.

At that hearing, Plaintiff testified that Defendant Tokarz assaulted him on August 14, 2010. Dkt. 322 at 10. Plaintiff said he believed that the assault was in retaliation for the multiple grievances he had filed concerning denial of access to the restroom in the prison clinic. *Id.* According to Plaintiff, Tokarz told him that he would "have [him] killed" if he were to file a grievance against Tokarz or his son, who also worked at Green Haven. *Id.* at 11-12. Later that same day, as Plaintiff lay in an infirmary bed recovering from the assault, Defendants Cocuzza and Smith allegedly punched him in the face. *Id.* at 14. Plaintiff subsequently filed a grievance about the August 14 assaults. *Id* at 15.

Plaintiff further testified that, on September 20, 2010, he was escorted by Defendants Corbin and Smith to a meeting in a private room with Cocuzza. *Id.* at 16. Cocuzza told Plaintiff he was "handling one of [his] grievances," which Plaintiff assumed meant the investigation into the August 14 assaults. *Id.* at 17. Cocuzza said that he was "tired of [Plaintiff] complaining." *Id.* at 18.

2

Meanwhile, Corbin and Smith began "hitting [Plaintiff] in the back of [his] head." *Id.* Corbin threw Plaintiff to the floor and "choked [him] for a couple of seconds." *Id.* Cocuzza then told Plaintiff that if he found out about any "complain[ts] to anyone about the[] assaults," he would "have [him] sent [to solitary confinement], set up with a weapon or seriously injured." *Id.*

Plaintiff did not grieve the September 20 assault. He said he believed Cocuzza enjoyed sufficient influence at Green Haven to carry out the threats because he was "a sergeant and supervisor." *Id.* at 19. Plaintiff explained that he took Cocuzza's threats more seriously than those of Tokarz because Cocuzza not only beat him, but also failed to intervene during an assault, and was in charge of investigating the related grievances. *Id.* at 22. According to Plaintiff, he became "afraid for [his] safety" and "lost a lot of confidence in the grievance process." *Id.* at 19-20. On October 6, however, Plaintiff filed an appeal of the denial of the grievance stemming from the August 14 assault. *Id.* at 24. On cross-examination, Plaintiff explained that he did not fear taking that action because he (mistakenly) believed that appeals—unlike initial grievances—were handled by a state entity outside Green Haven and thus would not draw the attention of Cocuzza, Smith, or Corbin. *See id.* at 24, 53.

Defendant Smith testified that he never struck Plaintiff, nor did he observe Corbin or Cocuzza harming or threatening plaintiff in any manner. *Id.* at 75. On cross-examination, Smith stated that he learned on September 20 that he had been summoned to the Inspector General's Office with regard to the alleged August 14 assault. *Id.* at 79. Cocuzza testified that he interviewed Plaintiff in connection with the investigation of an inmate grievance on September 20, but that he was alone with Plaintiff during that process. *Id.* at 88. Cocuzza did not believe he was a party to the August 14 grievance that he was tasked with investigating. *Id.* at 89. He also denied that he or any other officer assaulted Plaintiff on September 20. *Id.* at 90.

3

Following the hearing, the Court ordered the parties to submit additional briefing that specifically addressed whether the factual disputes relating to exhaustion—namely, whether Cocuzza's purported threats of September 20 rendered administrative remedies unavailable to Plaintiff with respect to that assault—were so intertwined with the merits of Plaintiff's underlying claims that they should be submitted to a jury rather than resolved by the Court.  Dkt. 320.

## LEGAL STANDARD

The Prison Litigation Reform Act of 1995 ("PLRA") "mandates that an inmate exhaust 'such administrative remedies as are available' before bringing suit to challenge prison conditions." *Ross v. Blake*, 136 S. Ct. 1850, 1854–55 (2016) (quoting 42 U.S.C. § 1997e(a)).  When remedies are unavailable, prisoner-plaintiffs are exempt from this requirement.  *See, e.g., id.*  An administrative procedure is considered unavailable when, as relevant here, "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Lucente v. Cty. of Suffolk*, 980 F.3d 284, 311 (2d Cir. 2020) (internal quotation marks omitted).  The Court of Appeals for the Second Circuit has held that "'[t]he test for deciding whether the ordinary grievance procedures were available [is] an objective one: that is, would a similarly situated individual of ordinary firmness have deemed them available.'" *Id*. at 311–12 (quoting *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004)).  "On this issue, [the Second Circuit] has noted that threats or other intimidation by prison officials may well deter a prisoner of ordinary firmness from filing an internal grievance, but not from appealing directly to individuals in positions of greater authority within the prison system, or to external structures of authority such as state or federal courts."  *Id.* at 312 (internal quotation marks omitted).

The question of exhaustion is generally determined by the court prior to trial even if the underlying material facts are in dispute, as "the Seventh Amendment does not guarantee a jury trial

4

on factual disputes regarding administrative exhaustion under the PLRA." *Messa v. Goord*, 652 F.3d 305, 310-311 (2d Cir. 2011).  The *Messa* court stressed, however, that "the factual disputes relating to exhaustion [we]re *not intertwined* with the merits of [the plaintiff's] underlying . . . claim." *Id.* at 309 (emphasis added).  Judicial resolution of the exhaustion question therefore did not interfere with the plaintiff's Seventh Amendment right to have a jury resolve the merits of the ultimate dispute.  *Id.* (citing *All. for Envtl. Renewal v. Pyramid Crossgates Co.*, 436 F.3d 82, 87–88 (2d Cir. 2006) and *Robinson v. Metro–North Commuter R.R. Co.*, 267 F.3d 147, 170 n. 14 (2d Cir. 2001)).

Although the Court of Appeals for the Second Circuit has not expressly held that a jury must resolve factual disputes regarding exhaustion when the underlying facts are entangled with those that underlie a plaintiff's substantive claims, at least two district judges within this Circuit have so concluded.  *See Daum v. Doe*, No. 13-CV-88V(F), 2016 WL 3411558, at *2 (W.D.N.Y. June 22, 2016) ("[A] jury should find the facts that will determine the exhaustion issue because the factual issues relating to exhaustion are intertwined with the merits of [the plaintiff's] underlying excessive force claim." (internal quotation marks omitted)); *Rickett v. Orsino*, No. 10 Civ. 5152 (CS)(PED), 2013 WL 1176059, at *23 (S.D.N.Y. Feb. 20, 2013), *report and recommendation adopted*, No. 10-CV-5152 (CS)(PED), 2013 WL 1155354 (S.D.N.Y. Mar. 21, 2013).

## DISCUSSION

Plaintiff argues that the factual disputes related to exhaustion are best adjudicated by a jury at trial because the facts pertaining to the availability of administrative remedies—whether Cocuzza in fact assaulted and threatened Plaintiff on September 20—are "inextricably intertwined" with the merits of his underlying claims of excessive force. Pl. Mem. at 5.  Defendants, by contrast, insist that exhaustion must be determined by the Court pre-trial, regardless of any factual entanglement.

Defs. Mem at 11.  According to Defendants, adjudicating the factual disputes about the September 20 assault would not violate Plaintiff's Seventh Amendment rights because "when and if the jury is called upon to address the merits, it is not bound by any facts the Court finds in resolving the issue of exhaustion." *Id.* at  20.  The Court disagrees.

Defendants' argument that there is no exception to the holding in *Messa* that exhaustion is not a jury issue, *see id.* at 13, is misguided.  While it is true that the *Messa* court held that there is no "right to a jury trial on factual disputes regarding an inmate's failure to exhaust administrative remedies," in affirming the district judge's resolution of disputed facts, it specifically noted that those disputes were "not intertwined with the merits of Messa's underlying excessive force claim," suggesting that such factual entanglement would indeed compel a different result.  625 F.3d at 308-09.  This conclusion is consistent with the Circuit's statement—in the context of statutory standing under the Clean Water Act—that when the evidence overlaps "such that fact-finding on the jurisdictional issue will adjudicate factual issues required by the Seventh Amendment to be resolved by a jury, then the Court must leave the jurisdictional issue for the trial."  *All. for Envtl. Renewal,* 436 F.3d at 88.  The Court finds that the same logic applies to the PLRA's exhaustion requirement,  in accordance with the views of other district judges in this Circuit and with the strong implication of *Messa* itself.

Here, the factual issues underlying the availability of administrative remedies are plainly intertwined with Plaintiff's substantive claim of excessive force.  To determine whether the grievance procedure was available to Plaintiff, the Court would necessarily have to determine whether to credit his testimony that he was assaulted on September 20 in retaliation for his previous grievances—*i.e.*, the ultimate factual issue underlying his claim for excessive force.  Determining that factual issue in favor of Plaintiff would necessitate a finding that prison administrators

6

"thwart[ed]" the grievance process through "intimidation" sufficient to deter a "similarly situated individual of ordinary firmness" from speaking out. *See Lucente*, 980 F.3d at 311-12. By contrast, were the Court to credit Defendants' version of events—that no such assault occurred—and conclude that remedies were in fact available, it would effectively be ruling on Plaintiff's substantive claim of excessive force. Such a ruling would violate Plaintiff's "right to a jury's resolution of the merits of the ultimate dispute." *Messa*, 652 F.3d at 310.

Under these circumstances, the Court will leave it to the jury to determine the factual issues underlying the September 20 assault, which are determinative of whether administrative remedies were available to Plaintiff. Accordingly, the Court declines to dismiss the claims arising from that alleged assault.

In accordance with the joint pretrial schedule of July 24, 2020, Dkt. 357, the parties shall submit a joint pretrial order, motions in limine, pretrial memoranda of law, as well as joint proposed voir dire questions, verdict form, and jury instructions by January 8, 2021.

SO ORDERED.

Dated:    December 21, 2020
         New York, New York

_____
Ronnie Abrams
United States District Judge